IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

VICTORY THROUGH JESUS SPORTS )
MINISTRY FOUNDATION, )
                                )
           Plaintiff, )
                                )
vs. )          Case No. 09-0852-CV-W-ODS
                                )
LEE'S SUMMIT R-7 SCHOOL )
DISTRICT, et al., )
                                )
           Defendants. )

ORDER AND OPINION DENYING CLAIMS FOR INJUNCTIVE RELIEF AND
DAMAGES

       Pending is Plaintiff's motion for a preliminary injunction (Doc. 6). The parties
agree that it is appropriate to consolidate the preliminary injunction hearing with trial on
the merits under Fed. R. Civ. P. 65(a)(2). The Court treats Plaintiff's motion as one for
a permanent injunction and denies it. Plaintiff's claim for damages is also denied.

I. INTRODUCTION

       Plaintiff Victory Through Jesus Sports Ministry Foundation (Victory Through
Jesus) is a nonprofit religious organization incorporated in Kansas. Its sole employee is
Goran Hunjak. Hunjak played professional soccer for 19 years, including for a team in
Kansas City, Missouri. Hunjak has lived in the Kansas City area–mostly Overland Park,
KS–since 2001. Victory Through Jesus began offering soccer camps in summer of
2004. The camps started in the Kansas City metropolitan area and have expanded to
Wichita, Kansas, and New Jersey.

       Defendant Lee's Summit R-7 School District (the School District) serves a
population of nearly 100,000 residents in Lee's Summit, Missouri and surrounding

communities.  In 1998 the School District had 13,000 students.  The School District experienced continued and substantial growth over recent years, and its present total enrollment is in excess of 17,000 students, with approximately 9,200 elementary school students.  Defendant David McGehee is the Superintendent of Schools for the School District.

Dr. Mary Alice Neal is the Assistant Superintendent for Elementary Instruction at the School District.  Dr. Neal is responsible for reviewing and approving informational flyers from entities and organizations to be sent home with elementary students in their backpacks.  When she arrived at the School District in 1998, Lee's Summit "[was] considered to be a very small town and just about anybody could send flyers through [the] school district."  Requests to distribute flyers increased with the growth of the Lee's Summit community.  Dr. Neal estimated that the stack of different flyers submitted for distribution was 2 feet high in one year.  The School District began receiving "complaints from parents that too many non-school-related papers were coming home with the children" and the parents "were very angry about that."

In 2005 the School District decided to limit the number of flyers it distributed to students.  A group was assembled to recommend a change to the existing flyer distribution procedures.  The sole and stated purpose of the group was to limit the volume of promotional materials sent home with students.  Guidelines were memorialized in a document entitled "Procedures for Flyer Distribution to Students," revised December 2005.  This document stated:

> **R-7 web site opportunities**
> The R-7 School District will be posting approved informational flyers from not-for-profit organizations on the district's website . . . .
>
> By posting this information on the website, organizations will have the opportunity to reach families of junior high and high school students as well as families of elementary students.  Organizations will also be able to reach families without the expense of printing thousands of pre-sorted flyers. . . .
>
> **Organizations approved for "backpack" flyers**
> Due to the overwhelming number of requests the district receives to send

information home with elementary students in their backpacks, the district
limits distribution to not-for-profit organizations and approved events
sponsored by civic groups that directly benefit R-7.  Flyers that have been
approved will be sent home with students and/or posted on the district's
website. . . .

    . . . .

Through these changes, we hope to continue to provide families with
information about student-related opportunities while reducing the number
of flyers that are sent home with students.

Until 2008, Victory Through Jesus did not promote its soccer camps through local
schools, but relied only on local churches.  Victory Through Jesus decided to offer a
camp in Lee's Summit during the summer of 2008.  On April 29, 2008, Hunjak emailed
the School District requesting permission to distribute a flyer to elementary students.
Hunjak identified his organization as "Victory Soccer Camp."  The name "Jesus" was not
mentioned.  Hunjak similarly identified his organization on his proposed flyer; nothing in
Hunjak's email or his flyer indicated that Victory Through Jesus was a religious
organization.  The School District denied Hunjak's request to distribute the flyer to
students referencing the guidelines quoted above and attaching the guidelines to its
responsive email.  The School District did however post Hunjak's flier on its website.  A
followup email sent by Hunjak after the School District's decision contained the following
signature block not appearing in his previous email:

Goran Hunjak
Sports ministry
Victory Through Jesus
Reaching Others Through Soccer
913-284-7601
Please visit us at www.victoryinsoccer.org

With the advice of counsel, the School District updated its procedures governing
informational flyers and approved Administrative Procedure KI-AP in July 2008.  KI-AP
did not change the general guidelines for web site postings quoted above.  KI-AP did
however make significant modifications to the School District's procedures governing

backpack flyers.  KI-AP provided in this respect:

**Organizations Approved for "Backpack" Flyers for Students**

Flyers that have been approved will be sent home with students and/or posted on the district's website.

Only flyers from the following groups/organizations will be approved for distribution:  Lee's Summit Educational Foundation, PTA, Lee's Summit Chamber of Commerce, Lee's Summit Symphony Orchestra, Lee's Summit Parks and Recreation, Greenwood Sports Association, Lee's Summit Cares, Longview College for Kids, D.A.R.E., Jackson County, LS Girls' Softball Association, LS Baseball Association, LS Football Association, LS Soccer Association, LS Junior Basketball, Downtown Lee's Summit Main Street, each R-7 school, its Partners in Education* and its Booster Clubs.

Flyers must be submitted for approval by e-mailing a Microsoft Word, Excel document or .pdf file . . . .

* Partners In Education is a district-sponsored program.  Businesses that are formal business partners with a particular school, district program or the district as a whole, may seek approval for flyer distribution one per quarter. . . .

*Exception for district wide backpack distribution*:  Community youth organizations such as Boy Scouts and Girl Scouts will be provided a one-time opportunity to distribute program flyers at the beginning of school on either the first or second backpack distribution date.  These flyers must be approved at least 6 days prior to distribution.

KI-AP was not the only procedure governing public solicitations and advertising in the School District's facilities.  The School District also had more general guidelines set forth in a policy denominated "KI" (no obscenity, no libel, no indecent or vulgar language, etc.)  The first sentence of KI read, "It is the intent of the district to operate a nonpublic forum and, except as allowed in this policy, advertisement is prohibited on district property."  Under the caption "**Distribution to Staff and Students**," KI stated, "Distribution will be limited as described in KI-AP."

Victory Through Jesus held its June 2008 summer camp in Lee's Summit and

4

"had a wonderful response" from the community. Hunjak knew of the exception in KI-AP for "[c]ommunity youth organizations" that would allow Victory Through Jesus to distribute backpack flyers at the beginning of the 2008-2009 school year for its 2009 summer soccer camp. Hunjak did not take advantage of this opportunity because he felt it would be ineffective to promote his camp 10 months before it was held. On January 26, 2009, Hunjak emailed the School District and asked it to distribute Victory Through Jesus' flyer promoting its summer soccer camp in Lee's Summit for 2009. Again, nothing in Hunjak's email or the flyer indicated that Victory Through Jesus was a religious organization. The School District again approved Hunjak's flyer for web site posting only. The School District did not distribute hard copies of Hunjak's flyer because the only distribution period for community youth organizations under KI-AP was at the beginning of the school year and it had passed.

In a letter dated February 20, 2009, counsel for Victory Through Jesus requested that the School District promptly distribute hard copies of its flyer to the students and change the School District's policy "to allow athletic programs such as Victory Soccer Camp access to the District's literature distribution on the same terms and conditions as those organizations currently permitted to distribute 'Backpack Flyers.'" The groups specifically named in KI-AP were not restricted to the number of times during the school year they could distribute their informational flyers. The letter argued that "[d]enying Victory Soccer Camp the ability to distribute flyers while permitting another soccer organization [Lee's Summit Soccer Association] to do so violates [Victory Through Jesus'] constitutional rights." In a letter dated March 11, 2009, the School District rejected Victory Through Jesus' request, stating that it "ha[d] no plans to change [KI-AP] at this time." Hunjak subsequently advertised his 2009 summer soccer camp through local churches and by retaining a mass mailing firm which sent letters to all the homes within a 15-mile radius of the School District, causing Victory Through Jesus to incur additional expenses. Hunjak's 2009 Lee's Summit summer soccer camp was held in June and it "went very good."

Victory Through Jesus filed this lawsuit against the School District and McGehee on October 15, 2009, claiming that its right to freedom of speech under the First

Amendment and its right to equal protection of the law under the Fourteenth Amendment had been infringed. Victory Through Jesus sought declaratory relief, preliminary and permanent injunctive relief, and damages. The School District thereafter amended KI-AP in December 2009 to allow additional flyer distribution periods for community youth organizations. These groups are now permitted to distribute program flyers in September, January, and April of the school year. The School District approved Victory Through Jesus' flyer advertising its 2010 summer soccer camp for distribution in April 2010.

At the hearing on Victory Through Jesus' motion for a preliminary injunction, Hunjak testified that other school districts in Missouri and Kansas distributed his flyers without limiting the distributions to September, January, and April. Hunjak stated that being permitted to distribute his flyers three times per school year under the community youth organization exception in KI-AP was not sufficient. Hunjak explained that he distributed flyers either 12, 8, or 4 weeks before the soccer camps and that he needed to have the freedom to distribute them in months other than just April because sometimes his camps are held at different parts of the summer. (Hunjak's Lee's Summit summer camps were both held in June). Hunjak also testified that being able to distribute flyers more than once would be advantageous to his ministry and that he had considered doing soccer camps during seasons other than summer as his ministry expanded. However, Hunjak admitted that he has never requested that his flyers be distributed more than once at the other schools which permit flyer distributions, and Hunjak expressed no intent to distribute his flyers more than once before his 2010 summer soccer camp in Lee's Summit. Hunjak explained that Victory Through Jesus was a young ministry and that at this time it could not afford to distribute backpack flyers more than once at the schools.

Dr. Neal testified that the named groups in KI-AP were selected because these groups–with the exception the Lee's Summit Symphony Orchestra–each had a "long standing [sic] relationship with the district." For example, Dr. Neal testified that the Lee's Summit Educational Foundation was a philanthropic group established to assist the School District with alternative funding sources and had raised substantial amounts

6

of revenue.  The athletic associations listed in KI-AP (including Lee's Summit Parks and Recreation) have formal, written reciprocal agreements with the School District whereby each party provides space and/or services to the other for the mutual benefit of both. Dr. Neal described these relationships as "symbiotic" in that the School District and the associations share fields and other resources.  Another example was Lee's Summit Cares, which Neal described as an organization created out of a partnership between the School District and the Ministerial Alliance in Lee's Summit.  Its mission is to reduce drug and alcohol abuse and to work with school officials to provide programs to benefit the community.  As for the Lee's Summit Symphony, Dr. Neal testified it was created by a former School District employee and provides performance opportunities for School District staff, students, and former students which would not otherwise be available. The Symphony Orchestra uses the School District's performance arts center for concerts.  Dr. Neal maintained that in each case only the relationship between the School District and the organization was used to determine whether the organization would be named in KI-AP; the viewpoint or speech of the organization was not considered.

Dr. Neal admitted that she allowed six groups not named in KI-AP and not qualified under KI-AP's community youth organization exception to distribute informational flyers to students.  Dr. Neal indicated she did this because believed it was beneficial to the students.  All but one of these groups were limited to distributing their flyers to specific schools.  Dr. Neal permitted Greenwood Families Helping Families to distribute its "Breakfast with Santa" flyer and Greenwood Parks and Recreation to distribute its Christmas Tree Lighting flyer to elementary students living in Greenwood, a small community served by the School District.  For students at Mason Elementary School, Dr. Neal permitted Lake Lotawana Baseball & Softball Association to distribute its informational flyer regarding sign-ups, Colbern Road Community of Christ to distribute its Valentine's Day flyer regarding free childcare, and Lake Lotawana Community Club and Optimist Club to distribute its Easter Egg Hunt flyer.  Dr. Neal also permitted Lee's Summit 360°, a group established by the City of Lee's Summit, to distribute its flyer encouraging citizens to become involved in planning the city's future.

Unlike the other flyers, there is no evidence Dr. Neal restricted distribution of the Lee's Summit 360° flyer to a specific school in the district.

After the evidentiary hearing, the parties submitted their proposed findings of fact and conclusions of law. The case is now ready for ruling.

## II. DISCUSSION

Victory Through Jesus' suit for injunctive relief implicates the current version of KI-AP enacted in December 2009. The School District maintains Victory Through Jesus does not have standing to sue for injunctive relief. Standing requires a plaintiff to show injury-in-fact, causation, and redressability. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). In the case of complaints for injunctive relief, the injury-in-fact element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm. *Park v. Forest Service of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000). The threatened injury must be "impending ." *Id.* (citations omitted) (internal quotation marks omitted). KI-AP permits Victory Through Jesus to distribute its flyer three times per year under the community youth organization exception. The School District permitted Victory Through Jesus to distribute its flyers in April 2010. Distribution in April meets the 12-8-4-week window within which Victory Through Jesus sends out its flyers for its Lee's Summit Soccer camp, which historically has been held in June. Hunjak expressed no present intent to distribute his flyers to the School District's students at any time other than April. Victory Through Jesus has been unable to afford distributing its flyers more than single time per year at other schools and has no intent to do so in 2010. Hunjak's testimony that he would like to distribute flyers more often in the future as his ministry expands is speculation; Victory Through Jesus has neither the financial ability or intent to do so now.

Victory Through Jesus argues that it has standing because it has asserted a facial challenge to KI-AP. Victory Through Jesus is attempting to invoke an exception to the general rule that a party may not facially challenge a law on the ground that it would be unconstitutional if applied to someone else. The exception permits the party to

assert a free speech claim on the basis that the challenged law chills the speech of others who may avoid expression for fear of enforcement. *See SOB, Inc. v. County of Benton*, 317 F.3d 856, 864 (8th Cir. 2003). This exception is inapplicable because KI-AP is not a law that penalizes expression. The Court finds that Victory Through Jesus does not face a threat of impending harm and, moreover, it does not have standing to receive injunctive relief.

Victory Through Jesus also seeks damages for the mass mailing expenses it incurred due to the School District's refusal to distribute flyers in March 2009. This request for relief implicates the version of KI-AP in effect during the 2008-2009 school year. Victory Through Jesus argues the flyer distribution system was a designated public forum. A designated public forum is a nontraditional public forum the government intentionally opens to expressive activity for a limited purpose such as use by certain groups or use for discussion of certain subjects. *Bowman v. White*, 444 F.3d 967, 975 (8th Cir. 2006) (citation omitted). The School District contends that the flyer distribution system was a nonpublic forum. A nonpublic forum is simply a forum that is neither a traditional public forum or a designated public forum. *Id.* at 976. "The government can most freely restrict speech in a nonpublic forum." *Id.* The School District stated in its general policy KI that it intended to create a nonpublic forum.

The mere fact that expressive activity occurs in a nontraditional forum does not mean the government has opened a public forum. *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 805 (1985). A designated public forum is created only if the government *intentionally opens a nontraditional public forum for public discourse. Bowman*, 444 F.3d at 975. The government's intent is discerned by examining the government's policy and practice in relation to the forum, the nature of the property, and its compatibility with expressive activity. *Cornelius*, 473 U.S. at 802. The key in determining whether a public forum has been created is the distinction between "'general access'" and "'selective access.'" *Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666, 679 (1998) (citations omitted). With general access, "the government creates a designated public forum when it makes its property generally available to a certain class of speakers." *Id.* With selective access, "the government

9

does not create a designated public forum when it does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, 'obtain permission,' [citation omitted], to use it." *Id.* The Supreme Court has declared that "school facilities may be deemed to be public forums only if school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public' . . . or by some segment of the public, such as student organizations." *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (citations omitted).

The School District did not have a policy or practice of permitting members of the general public to distribute flyers at its schools. The 2008-2009 version of KI-AP reserved eligibility for access to distribute flyers to a particular class of speakers–local nonprofit groups with a long-standing or close affiliation with the School District. These groups were required to then, as individuals, obtain permission from Dr. Neal to use the forum by emailing their flyers to the school district. The record reveals that Dr. Neal reviewed every flyer and approved the flyers on an individual basis. *Cf. Cornelius*, 473 U.S. at 804 (noting that government did not ministerially grant access to tax-exempt organizations to participate in Combined Federal Campaign; forum was nonpublic) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 47 (1983) (noting that permission to use interschool mail delivery system was not granted as matter of course to all seeking to use it; forum was nonpublic)). Victory Through Jesus points out that Dr. Neal permitted five local groups similar in nature to those listed in KI-AP to distribute flyers to students at specific schools in the district. Dr. Neal also permitted one group concerned with planning the future of the Lee's Summit community to distribute its informational flyer district-wide. In *Perry Educ. Ass'n*, the Supreme Court held that the fact some non-school connected groups (YMCA, Cub Scouts, and other civic and church organizations) periodically were given selective access to use a school's interschool mail delivery system normally intended only for internal communication of school-related matters to teachers "[did] not transform government property into a public forum." 460 U.S. at 47. The Supreme Court referenced *Greer v. Spock*, 424 U.S. 828, 838 n.10 (1976). *Greer* involved political candidates who were

denied access to speak at a military base.  *Id.* at 832.  The Supreme Court ruled that the fact authorities historically had permitted other civilian speakers and entertainers to appear at the base

> did not of itself serve to convert Fort Dix into a public forum . . . .  The decision of the military authorities that a civilian lecture on drug abuse, a religious service by a visiting preacher at the base chapel, or a rock musical concert would be supportive of the military mission of Fort Dix surely did not leave the authorities powerless thereafter to prevent any civilian from entering Fort Dix to speak on any subject whatever.

*Id.* at 838 n.10.  Likewise, the fact that Dr. Neal periodically permitted limited groups not specifically identified in KI-AP to distribute flyers because she thought doing so would be beneficial to students did not convert KI-AP into a public forum and did not leave the School District powerless to prevent any outside organization from using the flyer distribution system.

Nor does the history of KI-AP support a finding that the School District was motivated by a desire to create a public forum.  *See Cornelius*, 473 U.S. at 805 (examining history of forum in concluding forum not open).  When Dr. Neal first arrived at the School District in 1998, "just about anybody could send flyers through [the] school district."  By 2005 this open policy proved overwhelming.  The sole and stated purpose of the group formed to change the School District's procedure for handling flyer distribution requests was to *limit* the volume of promotional materials sent home with students.  *Cf. id* (noting that Combined Federal Campaign "was designed to minimize the disruption to the workplace that had resulted from unlimited ad hoc solicitation activities by lessening the amount of expressive activity occurring on federal property").  The School District accomplished this goal with KI-AP and did not intend to create a public forum.

An examination of the nature of the property involved and its compatibility with expressive activity also strengthens the conclusion that the flyer distribution system in 2008-2009 was a nonpublic forum.  The mission of an elementary school is to protect, nurture, and educate its students.  "[T]he potential 'verbal cacophony' of a public

forum . . . can be antithetical to the delicate 'custodial and tutelary' environment of an elementary school. *Muller by Muller v. Jefferson Lighthouse School*, 98 F.3d 1530, 1540 (7th Cir. 1996) (citations omitted). The previous open policy of the flyer distribution system was overwhelming to the School District and the parents. The School District's authorities made the determination that allowing certain limited groups to distribute flyers would be supportive of its educational mission. Allowing this limited expressive activity did not render the School District powerless from preventing any nonprofit organization from distributing its flyers at the schools.

The Court notes that if Victory Through Jesus' arguments were adopted, the result would be less speech, not more. *See Forbes*, 523 U.S. at 680. The Supreme Court's First Amendment jurisprudence "encourage[s] the government to open its property to some expressive activity in cases where, if faced with an all-or-nothing choice, it might not open the property at all." *Id.* Forcing the School District to distribute flyers from every sports-related civic or church organization that wished to attract elementary students served by the School District would place an unreasonable burden on the School District and parents, the latter of which already had expressed anger over the amount of flyers being distributed. The School District reasonably could decide that inclusion of all such groups actually would undermine its ability to educate parents of local events beneficial to the community. "[F]aced with the prospect of cacophony, on the one hand, and First Amendment liability, on the other," *id.* at 681, the School District reasonably could choose not to inform parents of community events through backpack flyers at all. Limiting the School District to these options would discourage the School District from performing a service beneficial to its students, not encourage it.

The 2008-2009 version of KI-AP was a nonpublic forum. In a nonpublic forum, the government may impose restrictions that are (1) reasonable in light of the purposes served by the forum, and (2) viewpoint neutral. *See Bowman*, 444 F.3d at 976. Victory Through Jesus insists that it was excluded because of its religious viewpoint. The evidence demonstrates otherwise. Dr. Neal credibly testified that the respective viewpoints of the organizations were not considered in formulating KI-AP. When Hunjak first requested distribution of his flyer in May 2008, there was nothing in Hunjak's

12

correspondence indicating that he represented a religious organization.  The School District cited its flyer distribution policy in its March 2009 letter in denying Hunjak the right to distribute his flyer to the students.  The evidence establishes that Victory Through Jesus was excluded not because it was religious, but because of its status as an organization outside the School District's community unaffiliated with and which had no special or symbiotic relationship to the School District.  *See Perry Educ. Ass'n*, 460 U.S. at 49 (finding that union which did not represent teachers was excluded from interschool mail system because of its status, not viewpoint); *cf. Good News Club v. Milford Central School*, 533 U.S. 98, 111-12 (2001) (holding that exclusion of religious group because it was religious constituted viewpoint discrimination); *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 393-94 (1993) (holding that denial of access for no reason other than group's religious perspective was invalid).  The Court holds that Victory Through Jesus was not discriminated against based on its religious viewpoint.

The Court also holds that the exclusion of Victory Through Jesus was reasonably related to the purpose of the forum.  One purpose served by KI-AP was to educate and inform students and their parents of local activities or issues involving the community.  Another purpose of KI-AP was to reduce to a manageable level the amount of flyers being distributed to the students.  The School District's decision to allocate most of its flyer distribution efforts to community-based groups with whom it had reciprocal agreements, and to other community organizations providing symbiotic, longstanding support to the district cannot be regarded as unreasonable.  The School District's grant of more limited access to community youth organizations without a close relationship was a reasonable and viewpoint-neutral balance of the School District's competing goals.  Victory Through Jesus complains that KI-AP contained no specific standards governing Dr. Neal's discretion to approve or disapprove groups' requests to distribute flyers.  *See Lewis v. Wilson*, 253 F.3d 1077, 1080-81 (8th Cir. 2001) (citation omitted) (noting that restriction on speech must not "delegate unbridled discretion to the government officials entrusted to enforce the regulation").  The Supreme Court has never held that detailed regulations are necessary before speech in elementary school

facilities can be regulated.  "[E]xclusions of speakers from nonpublic fora have been upheld despite a complete absence of established procedures for making such decisions." *Griffin v. Secretary of Veterans Affairs*, 288 F.3d 1309, 1328 (Fed. Cir. 2002) (citing *Forbes* and *Greer*).  Moreover, the 2008-2009 version of KI-AP specifically identified the groups that would be approved for flyer distribution.  The fact that Dr. Neal permitted six groups not named in KI-AP to distribute flyers on a very limited basis (five were not permitted to distribute district-wide) does not establish that Dr. Neal's discretion was "unbridled."  In fact, these six groups bore the same characteristics justifying access as the organizations identified in KI-AP.  The nature of the forum dictated that the School District be vested with greater discretion to preserve the function and character of the forum. *See Griffin*, 288 F.3d at 1321-25 (rejecting unbridled discretion claim by individuals seeking to display Confederate flag in national cemetery; military officials required greater discretion to preserve nature and function of national cemeteries).  The latitude and discretion exercised by the School District in its operation of the backpack flyer forum was reasonable.

## III.  CONCLUSION

The Court holds that Victory Through Jesus does not have standing to seek injunctive relief.  The Court further holds that the School District's refusal to distribute Victory Through Jesus' flyers in March 2009 was not unconstitutional.  Victory Through Jesus' claims for declaratory, injunctive, and legal relief are denied.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: June 3, 2010                    UNITED STATES DISTRICT COURT